# LAW OFFICE OF SARAH KUNSTLER

315 FLATBUSH AVENUE #103 • BROOKLYN, NEW YORK 11217
(718) 783-3682 • FAX (347) 402-2014 • KUNSTLERLAW.NET

October 13, 2022

BY ECF AND EMAIL
Hon. Edward R. Korman
United States District Judge
Eastern District of New York                    **REDACTED**
225 Cadman Plaza East
Brooklyn, NY 11201                    **Re:    United States v. Wafa Abboud**
                                               **16 Cr. 396 (ERK)**


Dear Judge Korman:


        I am writing to provide the Court with an update to the sentencing submission counsel

submitted on Ms. Abboud's behalf on October 4, 2021 (Docket # 204.). For the Court's

convenience, we will provide another courtesy copy of the prior submission by electronic mail.

### I.      Objections to the PSR

        Since we submitted our initial objections to the PSR, Probation prepared an addendum

to its report adjusting the Guidelines calculation as follows:

| | |
|---|---|
| Base offense level (U.S.S.G. § 2B1.1(a)(1)): | 7 |
| Loss greater than $550,000 (U.S.S.G. § 2B1.1(b)(1)(H)): | 14 |
| Specific Offense Characteristic: U.S.S.G. § 2S1.1(b)(2)(a)): | 1 |
| Role Enhancement – Leadership U.S.S.G. § 3B1.1(c): | 2 |
| Role Enhancement – Abuse of Trust U.S.S.G. § 3B1.3: | 2 |
| Total | 26 |

(PSR Addendum ¶¶ 61-75.) With an adjusted offense level of 26, and a criminal history category

of I, the applicable advisory guidelines range is 63-78 months. We agree with this revised

calculation.

October 13, 2022
Hon. Edward R. Korman
Page 2 of 9

II.      **Present Circumstances**

As of this writing, Ms. Abboud is almost 55 years old. Her daughters, Yasmine and Noreen, are 24 and 26 years old. Her youngest, her son S███████, is 17 years old and a high school honor student in the 12th grade.

S██████, who is currently applying to college, relies solely on Ms. Abboud at this critical point in his life. As your Honor may remember, counsel twice sought permission over the summer for Ms. Abboud to drive her son to New Jersey so that he could take college entrance exams. We thank the Court for granting temporary modifications of Ms. Abboud's bail so she could do this for her son.

As he wraps up his final year of high school, S██████ also participates two days each week in scientific research in a partnership between his high school and SUNY Stonybrook, for which Ms. Abboud drives him back and forth.

Ms. Abboud and S██████ continue to live in the Merrick Avenue home. Noreen and Yasmine still reside in their apartment in Brooklyn. Noreen is currently looking for work and Yasmine works for the same accounting company.

The Merrick Avenue property belongs to the bank, which plans to sell it at a foreclosure auction on October 17, 2022. Ms. Abboud has found an interested buyer and submitted paperwork to postpone the foreclosure until after her sentence in the hopes that the federal government lien for Ms. Abboud's bond will be removed, making it easier to sell.

In addition to the government's lien on the property, there are liens for construction debt, tax debt, the second mortgage, and a lien from the Nassau County Department of Social Services

October 13, 2022
Hon. Edward R. Korman
Page 3 of 9

("DSS").[1] Ms. Abboud is in the process of removing the tax lien from the property and assuming

it as a personal debt. The prospective buyer has negotiated deals with the lienors to remove the

second mortgage and the construction lien as part of his purchase of the property. Should there

be any funds remaining after the bank recoups its money, DSS will recover the assistance it

provided. Otherwise, the debt will be dissolved. Ms. Abboud stands to make nothing from the

sale. If the deal for the sale of the house goes through, the bank has agreed to provide Ms.

Abboud with $5,000 in relocation assistance.[2]

At the time of our initial sentencing submission, Ms. Abboud was looking for work and

receiving public assistance. She no longer receives assistance for herself, but continues to receive

help with utilities, as well as $250/month in food assistance for S████.

In April of 2022, Ms. Abboud began working as an independent contractor for a medical

diagnostic company. She worked for this company for about six weeks, and she earned about

$1,000 in total.

In July of 2022, Ms, Abboud began consulting for an investment management firm.[3] Ms.

Abboud advises the firm on grants for which their clients in the healthcare industry may be

eligible. Under the terms of the contract, Ms. Abboud is entitled to a percentage of the funds

successfully raised.

---

[1] This lien was a condition of the public assistance that Ms. Abboud received and is a common
requirement for recipients of public assistance who own homes.
[2] Ms. Abboud has received preliminary approval from the bank to postpone the sale. If for some
reason the postponement is not approved, Ms. Abboud's only option will be to file for
bankruptcy, which will lead to a postponement and enable her to go through with the sale of the
property.
[3] Ms. Abboud does this work through Quality Management Sigma LTD, a company she formed
in February of 2020 for the purpose of providing such services. Because of the COVID Started
this company in February 2020 – but was unable to get any clients due to the COVID-19
Pandemic, and the company has been essentially dormant. This firm is her first client.

October 13, 2022
Hon. Edward R. Korman
Page 4 of 9

Since August 15, 2022, Ms. Abboud has worked part-time for a dry-cleaning company, where she makes $15/hour, providing bookkeeping services and doing deliveries.

Ms. Abboud continues to volunteer with The Fortune Society. Her volunteer position with the Women's Opportunity Rehabilitation Center has concluded, as it was a time-limited project related to expanding the center's services. Since May of 2022, she has volunteered with Worship Christian Center in St. Alban's, Queens. Drawing on her experience in social services, Ms. Abboud has helped the church with its outreach programs, including its food pantry, afterschool program, and senior citizen services. For each program, Wafa helped the church put together a plan for the provision of services and helped them identify, and apply for, sources of funding to allow the church to launch the programs to serve its community. For example, for the food pantry, Ms. Abboud helped the church successfully apply for the Department of Social Services Community Food Connections program. (*See* Letter from Worship Christian Center, attached as Exhibit 1.) And in September, Ms. Abboud began volunteering with a new non-profit organization started by her friend Tharwat Ahmed to provide assistance to families facing foreclosure and eviction. (*See* Letter from Tharwat Ahmed, attached as Exhibit 2.)

In the 1990s, Ms. Abboud was working with HIV prevention and treatment outreach in high-poverty African immigrant communities, which led her to fall in love with service work in vulnerable and marginalized communities and her career in disability services. Her work with The Fortune Society, the Women's Opportunity Rehabilitation Center, Father Tadros at the St. Mark Coptic Church Center (*See* Exhibit R to our prior submission), and the Worship Christian Center in St. Albans, have helped her re-connect with her dedication to service. Even in her darkest moments, Ms. Abboud has found within herself the ability to help those in need.

October 13, 2022
Hon. Edward R. Korman
Page 5 of 9

**III.    Ms. Abboud's** ▮▮▮▮▮▮▮

October 13, 2022
Hon. Edward R. Korman
Page 6 of 9

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

### IV.     The Appropriate Sentence

While the starting point for this Court's sentencing analysis is the advisory guidelines range of 63-78 months, we hope it is not the end point.

In particular, U.S.S.G. § 2B1.1, the fraud guideline, roundly criticized for its lack of empirical basis, is rarely where courts in this district end up. As discussed in our prior submission, from 2018-2020, 82.4 percent of fraud offenders in the Eastern District received sentences of less than 24 months. We respectfully submit that this is the group in which Ms. Abboud belongs.

There is no question that Ms. Abboud has been convicted of a serious crime. But she has also already been severely punished. Ms. Abboud spent four months in state prison on a related tax case; three months between September and November of 2019, and an additional month between May 20, 2021 and June 17, 2021. She was ordered to pay $35,450 in restitution and faces considerably more in restitution in the federal case.

Most significantly, Ms. Abboud has lost a career it took her decades to build. She has lost her status in the community, many friends and colleagues. Ms. Abboud has survived on a combination of loans and gifts from friends, help from her daughters, public assistance, and part-time work. She has lost her home and will soon have no place to live. She has fallen very far indeed.

October 13, 2022
Hon. Edward R. Korman
Page 7 of 9

Yet, despite all that she has lost, Ms. Abboud has not lost her commitment to service. She remains the only involved parent – indeed, only adult family member – in her children's lives. She continues to help her church, putting her skills in fundraising to the service of charity. We humbly ask your Honor to take these circumstances into account when considering the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and "to afford adequate deterrence to criminal conduct" 18 U.S.C. § 3553(a)(2)(A) & (B). *See also United States v. Stewart*, 590 F.3d 93, 141 (2d Cir. 2009) ("It is difficult to see how a court can properly calibrate a 'just punishment' if it does not consider the collateral effects of a particular sentence.").

Further, a custodial sentence in this case is unnecessary to "protect the public from future crimes of the defendant" 18 U.S.C. § 3553(a)(2)(C) & (D). Federal sentencing data also demonstrate that defendants like Ms. Abboud — who have no criminal history; are more than 50 years of age at the time of sentencing, are employed, and educated; have been married and in significant long-term relationships; and have no history of drug use—have the lowest rates of recidivism among all offenders.[6] In imposing the least severe sentence sufficient to protect the public from future offenses, the Court should consider the statistically low risk of recidivism presented by Ms. Abboud's history and characteristics. *See, e.g., United States v. Hamilton*, 323 F. App'x 27, 31 (2d Cir. 2009) (holding that "the district court abused its discretion in not taking into account policy considerations with regard to age recidivism not included in the Guidelines").

---

[6] *See U.S. Sent'g Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 28–29 (May 2004), https://www.ussc.gov/research/research-publications/measuring-recidivism-criminalhistory-computation-federal-sentencing-guidelines; *U.S. Sent'g Comm'n, Recidivism and the "First Offender,"* at 13–14 (May 2004), https://www.ussc.gov/research/research-publications/recidivism-and-first-offender

October 13, 2022
Hon. Edward R. Korman
Page 8 of 9

Finally, a custodial sentence is not necessary "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). Rather, the converse is true. Ms. Abboud is committed to volunteering in the community, to using her skills to help others. A non-custodial sentence with a mandatory community service component has the potential to serve a greater societal good than Ms. Abboud's incarceration.

Ms. Abboud's health issues are also certainly better addressed in a community setting than in the custody of Bureau of Prisons, which due to critical staffing shortages, has fallen far short of its own goals to provide "Health care … to inmates in accordance with proven standards of care without compromising public safety concerns inherent to the agency's overall mission."[7] In March of 2016, a report by the Office of the Inspector General ("OIG") noted severe deficits in medical staffing levels at BOP facilities, with only 83 percent of medical staff positions filled.[8] And in March of 2022, an OIG report auditing contracts awarded to the University of Massachusetts Medical School between 2012 and 2014 provided insight into the challenges facing the BOP's medical care of prisoners, including that the BOP "did not have a reliable, consistent process in place to evaluate either the timeliness of inmate healthcare or the quality of that care"; faced challenges in transporting inmates to off-site appointments which led to frequent delays in care, and lacked systems and processes "to track and monitor the causes for

---

[7] *See* BOP Program Statement 6031.01, at 2, available at 2, available at https://www.bop.gov/policy/progstat/6031_004.pdf; *See also* Pavlo, Walter, Federal Bureau Of Prisons' Medical Care Falls Short Of Its Own Policy, Forbes, April 19, 2022, available at https://www.forbes.com/sites/walterpavlo/2022/04/19/federal-bureau-of-prisons-medical-care-falls-short-of-its-own-policy/?sh=882b0f65eab3
[8] https://oig.justice.gov/reports/2016/e1602.pdf

October 13, 2022
Hon. Edward R. Korman
Page 9 of 9

rescheduling appointments" or "to monitor how long an inmate waited to receive care after a

cancelled appointment."[9]

█████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████.

    We respectfully submit that a sentence of further incarceration is greater than necessary

to meet the goals of sentencing in this case. We urge this Court to consider a sentence of time

served, to be followed by supervised release with home detention and community service

conditions that will permit Ms. Abboud to care for her minor son, support her young adult

daughters, receive the medical care she needs, continue her volunteer work, and pay her debt to

society as a contributing, tax-paying member of that society.

    Thank you for your kind consideration of this letter.

                Respectfully,

                Sarah Kunstler
                Beena Ahmad
                Attorneys for Wafa Abboud

  Cc:    AUSA Robert Polemeni
         Wafa Abboud

─────────────────

[9] https://oig.justice.gov/sites/default/files/reports/22-052.pdf

# EXHIBIT 1



**Worship Christian Center**
Pastor John W. Rivers

113-16 Farmers Blvd.
St. Albans, NY 11413
(631) 482-0758
WorshipCC.PJR@gmail.com
WorshipChristianCenterNY.org

October 6, 2022

Hon. Edward R. Korman
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Korman,

This letter is submitted on behalf of Worship Christian Center for Wafa Abboud.
Ms. Wafa has volunteered with us since May 2022 and has been a great gift to Worship Christian Center. She helped us facilitate and build our food pantry, which has already handed out 200 boxes of food to people in the community. Thanks to Ms. Wafa we are now able to get more food into the hands of the people in need. We're now able to feed more families because of her efforts to help improve the community.

Ms. Wafa continues to make us proud with her talents and attributes. Ms. wafa is a great resource to our church and our community as well as everyone she comes across, as a volunteer, she has helped improve our Outreach programs. As of now she is working with us to develop after school program to provide safe and structure environment to the children in a sensitive time of their life and help them to make better choice in their future.

She is also helping us to develop and provide services to senior's citizens, Ms. wafa is always available to us and everyone who she can assist she has a great impact on people and eager to support faith-based organization to provide services and change people life.
 Ms. Wafa put our application together, guide us through the process and met our team several Times to help them through the process.

Thank you for this opportunity to share the committed efforts of our volunteer, Wafa Abboud. Ms. Wafa's commitment has helped us help others


Sincerely


*Bishop John W Rivers*


*Tamiko Rivers*


*A place where people can worship knowing God is the center of attention*

# EXHIBIT 2

The Honorable Edward R. Korman
United States District Judge
225 Cadman Plaza East
Brooklyn, NY 11201

                                        Re: Wafa Abboud

October 13, 2022


Dear Judge Korman:

You may remember me. My name is Tharwat Ahmed and I am a long-standing friend of Wafa Abboud since 1995. I wrote a prior letter of support requesting leniency at her upcoming sentencing. I am writing this second letter to detail the help Wafa is providing me in a new non-profit initiative that I recently started to help homeowners who are facing foreclosure and tenants who are facing eviction.

The goal of the Family & Home Support Center, Inc. is to provide guidance and assistance to families who are going through eviction or foreclosure, a time when access to clear information options is crucial and can in some cases help avoid a home loss that can be financially ruinous, with lasting repercussions.

Wafa began volunteering her time with me in September, when I started this new project. This is who I know Wafa to be, a person who can be counted on. No matter what struggles she may be going through in her own life, I asked for her help and she gave it. She brings her passion to help others, a commitment I have seen in her throughout our friendship, as well as her firsthand experience in facing foreclosure.

                        Thank you for the time,


Tharwat Ahmed